**ORIGINAL**

# In the United States Court of Federal Claims
### No. 17-1007C
### Filed: February 5, 2018

**FILED**

FEB - 5 2018

U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| **TANYA V. WADE,** | * |
| **Plaintiff,** | * |
| **v.** | * |
| **UNITED STATES,** | * |
| **Defendant.** | * |

* * * * * * * * * * * * * * * * * *

**Motion to Dismiss; Reemployed Annuitant; Employment; Contract; Appointment.**

**Tanya V. Wade**, pro se, Havre de Grace, MD.

**Alison S. Vicks**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Lisa L. Donahue**, Assistant Director, Commercial Litigation Branch, Department of Justice, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Department of Justice, and **Chad A. Readler**, Acting Assistant Attorney General. Of counsel was **Yolanda McCray Jones**, United States Army Litigation Division, Civilian Personnel Branch, Fort Belvoir, VA.

## O P I N I O N

### HORN, J.

In the above-captioned case, pro se plaintiff Tanya V. Wade filed a complaint in this court alleging that the defendant, United States, acting by and through the United States Army Research Laboratory (ARL), breached an express or implied-in-fact contract between the United States and plaintiff. Ms. Wade alleges that her agreement with the ARL "stipulated" that, following her retirement from the ARL, she would return to the ARL to work as a reemployed annuitant for two years on a part-time basis. According to Ms. Wade, the "ARL decided to **not** honor the approved agreement, which ultimately resulted in a breach of contract." (emphasis in original). Ms. Wade seeks to recover $118,070.00 in monetary damages, which Ms. Wade states "is equivalent to the total amount of money that was stipulated in the formal agreement, i.e., the 2-year, part-time, annual salary of $59,035. dollars [sic]," plus interest.

**FINDINGS OF FACT**

Ms. Wade's most recent duty location, prior to her retirement after thirty-six years of government service, was at the Weapons and Materials Research Directorate (WMRD), a Directorate within the ARL, where she was an "Administrative Officer for Dr. Patrick J. Baker, Director of Weapons and Materials Research . . . ." Defendant states that Ms. Wade's position as an administrative officer was classified as a "DJ-0341-03, Category II" position, which, according to defendant, is the equivalent of a general schedule grade thirteen (GS-13) position. In the spring of 2015, Ms. Wade states that she informed her immediate supervisor, the then-Director of WMRD, Dr. Baker, of her intent to retire "due to my Mother's poor health." During this discussion, Ms. Wade alleges that Dr. Baker asked plaintiff if she was interested in returning to the ARL after she retired to work part-time as a reemployed annuitant for two years.[1] Ms. Wade claims that she informed Dr. Baker that she was interested in working part-time as a reemployed annuitant, and that Dr. Baker "instructed me to prepare the required documentation (the reemployed annuitant request) for him to sign and forward to Dr. [Thomas] Russell, Director of ARL, for approval." The reemployed annuitant request, which Ms. Wade attached to her complaint, appears to have consisted of the following three documents: a form titled "Re-employed Annuitant Request," a form titled "REQUEST FOR CIVILIAN HIRE," and a form titled "EMPLOYMENT OF ANNUITANTS – CHECKLIST FOR MANAGERS." (capitalization in original).

On May 29, 2015, Dr. Baker initialed Ms. Wade's Request for Civilian Hire form and signed her Employment of Annuitants Checklist for Managers form. The Request for Civilian Hire form stated that "Ms. Wade's extensive knowledge and experience make her a vital asset to the OD, WMRD," and provided that "[i]f approved, Ms. Wade would return to work for WMRD effective 11 January 2016, as a part-time re-employed annuitant on a time-limited appointment (NTE 2087 hours/2-years part-time)." The "Position Grade, Cost and GS Equivalency for Pay Banded Positions" section of the Request for Civilian Hire form indicated that the request was for a "DJ-0341-03, cat [category] 2; the annual cost is $59,035. and equivalent to GS-13." The Request for Civilian Hire form also stated that "WMRD is reviewing the Directorate's current administrative/clerical needs and developing a plan to address future requirements. WMRD is realigning the WMRD, Office of the Director's, government positions in order to begin addressing the current shortfalls and start strategizing future needs." Additionally, the Employment of Annuitants Checklist for Managers form indicated that Ms. Wade would be "filling [a] critical need of short duration" and providing "mentorship and oversight on various critical administrative/clerical matters . . . ." Thereafter, the documents supporting Ms. Wade's reemployed annuitant request were forwarded to Dr. Thomas Russell, the then-Director of the ARL, who, on June 16, 2015, initialed Ms. Wade's Request for Civilian Hire form and signed Ms. Wade's Re-employed Annuitant Request form. Ms. Wade's Re-employed

---

[1] Department of Defense Instruction Number 1400.25, Volume 300, which governs employment of federal civilian annuitants by the Department of Defense, defines an annuitant as an "individual receiving an annuity from any retirement system or who meets all requirements for entitlement to an annuity and has submitted a claim for retirement." See Dep't of Def. Instruction, No. 1400.25, Vol. 300, at 1-2 (Dec. 10, 2008).

Annuitant Request form provided that the purpose of the Re-employed Annuitant Request form was "[t]o obtain re-employed annuitant approval." Dr. Russell indicated on the Re-employed Annuitant Request form that his recommendation was to "[r]ecommend approval" and checked a box on the Re-employed Annuitant Request form which indicated that he "[a]pproved" the request. Ms. Wade alleges that "[o]nce Dr. Russell approved the request, I believed the agreement was valid and binding," and Ms. Wade further alleges that she did not seek any other employment opportunities because she expected to return to the ARL as a reemployment annuitant following her retirement.

According to defendant, however, for the ARL to rehire a federal employee as a reemployed annuitant, the ARL must first complete multiple steps "[p]ursuant to internal ARL procedures . . . ."[2] First, according to defendant, a "reemployed annuitant request package," which "consists of the annuitant's resume, the position description, and a justification which defines the unique or specialized skills that the annuitant possesses that are critical to the organization's mission," must be prepared for review by both the Director of the relevant Directorate within the ARL and the Director of the ARL. If the Directors approve the reemployed annuitant request documentation, "ARL management may then submit" a request for personnel action (RPA) to the ARL's Civilian Personnel Advisory Center, which "initiate[s] recruitment for a position that needs to be filled." Defendant states that "[r]ecruitment for a reemployed annuitant must first clear the Department of Defense Priority Placement Program (PPP) list, the Reemployed Priority List (RPL), and the Interagency Career Transition Assistance Program (ICTAP) list."[3] If a qualified applicant appears on the PPP, RPL, or ICTAP lists, defendant maintains that the selecting official must select that applicant. If an individual does not appear on the PPP, RPL, or ICTAP lists, "the reemployed annuitant is deemed to have cleared the ICTAP, PPP, and RPL lists." After the reemployed annuitant has "cleared" the three lists, a "salary

---

[2] Neither plaintiff nor defendant has submitted to this court a written copy of the "internal ARL procedures" governing the ARL's hiring of reemployed annuitants. Rather, when detailing the ARL's internal procedures, defendant cites to a declaration signed by Deborah Jean Thacker, a lead human resources specialist for the Aberdeen Proving Ground Civilian Personnel Advisory Center, and a declaration signed by Stephanie Koch, an associate director for corporate development for the ARL.

[3] Defendant, describes the PPP, RPL, and ICTAP lists as follows:

> The PPP is a mandatory placement program used to match eligible well qualified employees, most of whom are subject to displacement, with vacant positions throughout the Department of Defense. The Reemployment Priority List is the mechanism agencies use to give reemployment consideration to their former competitive service employees separated by reduction in force or fully recovered from a compensable injury after more than one year. The ICTAP is a process by which employees who have been involuntarily separated may receive selection priority for jobs in agencies other than the one in which they were previously employed.

(internal citations omitted).

memo and, as necessary, justification documentation" is prepared for review by the ARL Director. If the Director of ARL approves the salary memorandum, defendant states that the Civilian Personnel Advisory Center may extend a tentative offer to the reemployed annuitant applicant. Ms. Wade, who states that she has "extensive knowledge and experience with the ARL hiring process as well as the Civilian Personnel Classification Process," does not indicate in her filings with this court that she disputes the ARL's hiring process as described by defendant. Indeed, in her complaint Ms. Wade acknowledges that she needed to clear the PPP, the RPL, and the ICTAP lists before the Civilian Personnel Advisory Center "was ready to extend me the formal offer which I fully intended to accept."

On December 1, 2015, Ms. Wade states that, after more than thirty-six years of government service, she retired from her position with the ARL and indicates that "I retired with an approved agreement in hand and I firmly believed I would return to work on a 2-year, part-time position once the personnel action was processed and there were no priority placement matches." Beginning on December 15, 2015, Ms. Wade exchanged a series of text messages with a person Ms. Wade alleges to have been Stephanie Koch, who was an associate director of WMRD at that time, regarding a reemployed annuitant position with the ARL. Over the next three weeks, Ms. Koch sent several text messages to Ms. Wade requesting her resume, as the "CPAC [Civilian Personnel Advisory Center] needs it for quals." In the declaration signed by Ms. Koch, Ms. Koch states that, on January 4, 2016, she submitted Ms. Wade's RPA to the Civilian Personnel Advisory Center "for processing and initiation of the recruitment process."

On January 28, 2016, Ms. Koch received an email message from Ms. Thacker, who, at that time, was a representative of the Civilian Personnel Advisory Center, which stated that "ICTAP, PPP and RPL are all clear for Tanya's [plaintiff's] placement. Please provide me with a salary memo so I can proceed with the tentative job offer." Ms. Koch replied to Ms. Thacker's email message that same day and stated "[p]lease hold on this action, we were given some news at the Director's meeting yesterday that may change our requirement." On February 1, 2016, Ms. Koch informed Ms. Thacker via email message that:

> Last week we found out that we would be given an additional HR specialist. Given this person's arrival and Warren we aren't sure we have the funding or the need for this part-time position. I spoke with ARL HQ and they suggested we query the other Directorates on their needs before making a final decision on how to proceed. I will be in touch.

During the next few weeks, note entries in Ms. Wade's "electronic personnel file," which was maintained by the ARL and submitted to the court by Ms. Wade, indicate that ARL management was discussing whether any of the Directorates within the ARL had a need for a part-time reemployed annuitant with Ms. Wade's skill set.

One month after Ms. Koch's email to Ms. Thacker, on March 1, 2016, Ms. Koch sent another email message to Ms. Thacker stating that the other Directorates within the

4

ARL had declined the opportunity to hire Ms. Wade as a part-time reemployed annuitant. On March 3, 2016, Ms. Koch met with Dave Lyon, the then-Acting Director of WMRD, to discuss an alternative course of action regarding Ms. Wade's employment. In her declaration, Ms. Koch states that during her meeting with Mr. Lyon she "identified a critical shortfall in accomplishing ARL's Open Campus mission and we concluded that the plaintiff had the necessary skills to perform that mission until ARL could permanently fill the position." The position supporting the ARL's Open Campus mission, however, was a DJ-0341-03, category I position, rather than a DJ-0341-03, category II position, and had a lower annual salary than the DJ-0341-03, category II position.

Also on March 3, 2016, Ms. Wade received a phone call from Ms. Koch, during which Ms. Koch informed Ms. Wade that a different strategic hiring plan had been implemented by the ARL, and that the position Ms. Wade originally had applied for was no longer available. Ms. Wade alleges Ms. Koch then offered her a "DJ-02 position supporting Steve Taulbee and the duties included outreach and preparing invitational orders for all of Steve's visitors." Defendant, however, asserts that Ms. Koch offered Ms. Wade a DJ-0341-03, category I position during the March 3, 2016 phone call. Defendant also asserts that, on March 4, 2016, Ms. Wade sent an email message to Ms. Koch requesting additional information regarding the alternate position proposed by Ms. Koch, to which Ms. Koch responded by sending Ms. Wade "a detailed email" providing more information about the DJ-0341-03, category I position and explaining why the original position and level of employment were no longer available. Initially, Ms. Wade states she "was willing to consider this lower graded position" and states that she sent an email message to Ms. Koch requesting a position description for the proposed DJ-0341-03, category I position. In response, Ms. Koch informed Ms. Wade that the ARL's policy now required that a "corporate position description" be used for all new administrative hires, and that "she would initiate another RPA [request for personnel action] once the hiring request and position description were approved." In an email message dated March 15, 2016, Ms. Wade informed Ms. Koch that she "tried to be understanding of the situation and was previously willing to accept the next lower graded position (DJ-03, Cat [category] 1). Now things have changed again (changes/requirements regarding corporate PDs [position descriptions]). I believe the best thing for me to do is to seek legal advice." On March 22, 2016, Ms. Koch responded, via email message, to Ms. Wade and requested that Ms. Wade contact her by noon on March 28, 2016 if she was still interested in the DJ-0341-03, category I position. Ms. Wade did not respond to Ms. Koch's email message.

From March 2016 to May 2016, Ms. Wade alleges to have emailed other individuals at the ARL, including Michael Zoltoski, who was serving as the then-Acting Director of the ARL, regarding the DJ-0341-03, category II position, which Ms. Wade believed she was to have received following her retirement from the ARL. On May 2, 2016, Mr. Zoltoski sent an email message to Ms. Wade, which provided:

Tanya,

I'm in receipt of your 11 April 2016 email and I want to clarify a few matters and propose a path forward. Dr. Russell approved a reemployed annuitant

request. The approval paved the way to submit the RPA to CPAC [Civilian Personnel Advisory Center] to process the request, clear PPP and ICTP, and if no matches, then extend the job offer. Between the time the request was approved by Dr. Russell, and the RPA was submitted to CPAC, the requirement changed such that the DJ-03 Cat [category] II position was no longer needed. As a result, you were asked if you were interested in the DJ-03 Cat I position.

While I understand your frustration, there was never a formal offer extended by CPAC, because the requirement changed. The "approved agreement" you refer to is simply Dr. Russell's approval to pursue a reemployed annuitant position. Once there was a determination that the position was no longer needed, an attempt was made to find an alternate position that may interest you.

The void we need to fill right now is for a DJ-03 Cat I (part time) working STEM and Outreach with the WMRD Outreach team. If you are interested in that position, please let me know by email by 8 May 2016. As you know, if you are interested, PPP and ICTAP will have to be cleared before a formal offer is extended by the CPAC.

On May 3, 2016, Ms. Wade sent an email message to Mr. Zoltoski stating that "due to the impact this situation has had on my life, I really have no choice but to continue pursuing other avenues and will do so until I have exhausted every possible option." Ms. Wade also indicated in her email message to Mr. Zoltoski that she had "filed a formal complaint with the Office of Special Counsel (OSC) based on gross mismanagement . . . ." Thereafter, defendant states that Mr. Zoltoski directed Ms. Thacker to "formally cancel the RPA for the original Category II reemployed annuitant position," and it was formally canceled on May 26, 2016. Defendant asserts that an "RPA for the Category I position was never submitted because Ms. Wade did not indicate ongoing interest in that position."

Ms. Wade states that she filed her first complaint "based on Gross Mismanagement" with the Office of Special Counsel on "22 April 2014."[4] According to Ms. Wade, by letter dated October 28, 2016, the Office of Special Counsel informed her that "they were not taking any actions and were closing the complaint." Prior to the Office of Special Counsel's resolution of Ms. Wade's first complaint, on June 7, 2016, Ms. Wade states that she filed a second complaint with the Office of Special Counsel "based on Prohibited Personnel Practices." The Office of Special Counsel notified Ms. Wade by letter dated August 24, 2016 that its inquiry into her second complaint was being closed. Ms. Wade maintains that she "appealed" the Office of Special Counsel's August 24, 2016 decision, and that the Office of Special Counsel sent another letter to Ms. Wade on August

---

[4] The court notes that the date on which Ms. Wade alleges to have filed her first complaint with the Office of Special Counsel may be incorrect or the filing is not relevant to this case, as Ms. Wade did not retire from the ARL until December 2015.

31, 2016, informing Ms. Wade "that they had not changed their initial finding and the complaint was closed." Subsequently, Ms. Wade filed an Individual Right of Action (IRA) with the Merit Systems Protection Board (MSPB) on September 29, 2016. See Wade v. Dep't of the Army, No. PH-1221-17-0003-W-1, 2016 WL 6837554 (M.S.P.B. Nov. 14, 2016). On November 14, 2016, the MSPB issued a decision dismissing Ms. Wade's IRA for lack of jurisdiction. Id. Ms. Wade did not appeal the MSPB's decision.

On November 22, 2016, Ms. Wade asserts that she "sent a letter to MG [Major General] Cedric T. Wins, Commander, Research, Development, and Engineering Command (RDECOM), which is ARL's higher headquarters." Ms. Wade alleges that the "purpose of my letter to MG Wins was to make him aware of everything that had occurred in hopes that he would intervene and resolve the matter." According to Ms. Wade, "MG Wins asked his Inspector General (IG) to look into the matter," and, on March 6, 2017, "the RDECOM IG sent me a letter informing me that they were not taking any further action."

Thereafter, on July 26, 2017, plaintiff filed her complaint in the above-captioned case in this court. In her complaint, plaintiff asserts that she had entered into "a formally approved Reemployed Annuitant Agreement" with the ARL and claims that the reemployed annuitant agreement between plaintiff and defendant "stipulated" that plaintiff would return to the ARL in January 2016 to begin working "for 2-years, part-time, on a noncompetitive position." Plaintiff contends that the "ARL breached this agreement (expressed [sic] contract) when they prevented the Civilian Personnel from extending me the formal offer and then closed the action on 26 May 2016." Plaintiff also argues that "I was NOT under an appointment when the breach of expressed [sic] contract occurred thus allowing the contract laws that apply to non-government entities, to apply to me." (capitalization in original). Plaintiff asserts that she made major life decisions based on what she considered the parties' agreement, and that the decisions she made were "irreversible" and "adversely affected" her life. Plaintiff seeks monetary damages totaling $118,070.00 for the lost salary she allegedly would have received had she served as a reemployed annuitant in a DJ-0341-03, category II position with the ARL for two years. Plaintiff contends that the Tucker Act, 28 U.S.C. § 1491(a)(1) (2012), provides this court with jurisdiction to "decide claims based on an expressed [sic] or implied-in-fact contract," and that the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101 (2012) et seq., also provides this court with jurisdiction over her claim.

Defendant filed a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Rule 12(b)(1) and Rule 12(b)(6) (2017) of the Rules of the United States Court of Federal Claims (RCFC), respectively, and attached an appendix which included declarations signed by Ms. Thacker and Ms. Koch. Defendant asserts that this court lacks jurisdiction over plaintiff's complaint because neither the Tucker Act nor the CDA provide this court with jurisdiction to adjudicate plaintiff's claims. Defendant argues that plaintiff's complaint should be dismissed for failure to state a claim because plaintiff cannot establish the existence of an employment contract between the plaintiff and the United States. Defendant also

argues that this court lacks jurisdiction over plaintiff's complaint because the position Ms. Wade sought to obtain was an appointed position. According to defendant:

> Consequently, if a job offer had been extended to Ms. Wade, and she had accepted, then her subsequent employment type as an appointee could have been terminated at any point, and she would have been precluded from bringing a breach of contract action against the United States Government under the Tucker Act.

Defendant argues "[e]mployment pursuant to an appointment precludes a breach of contract action against the United States." Plaintiff responds that she did have a contract with the federal government because Dr. Russell approved her reemployed annuitant request documentation and that she "was not under appointment when the breach contract [sic] occurred."

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

The defendant has challenged this court's subject matter jurisdiction over plaintiff's complaint because the position plaintiff sought with the ARL was to be an appointive position, for which no contract could have come into existence, leaving no possibility for a breach of contract action. "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)). The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting

Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . .
Third, the Court of Federal Claims has jurisdiction over those claims where
"money has not been paid but the plaintiff asserts that he is nevertheless
entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007.
Claims in this third category, where no payment has been made to the
government, either directly or in effect, require that the "particular provision
of law relied upon grants the claimant, expressly or by implication, a right to
be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S.
[392,] 401-02 [1976] ("Where the United States is the defendant and the
plaintiff is not suing for money improperly exacted or retained, the basis of
the federal claim-whether it be the Constitution, a statute, or a regulation-
does not create a cause of action for money damages unless, as the Court
of Claims has stated, that basis 'in itself . . . can fairly be interpreted as
mandating compensation by the Federal Government for the damage
sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is
commonly referred to as claims brought under a "money-mandating"
statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see
also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must
demonstrate that an independent source of substantive law relied upon "'can fairly be
interpreted as mandating compensation by the Federal Government.'" United States v.
Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400
(1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United
States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374,
1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting
monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo
Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply
a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims
premised on other sources of law (e.g., statutes or contracts)."). "If the statute is not
money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal
should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed.
Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v.
United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir.
2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under
the Tucker Act."); Price v. United States, 133 Fed. Cl. 128, 130 (2017); Peoples v. United
States, 87 Fed. Cl. 553, 565-66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure
to state a claim, this court must assume that all undisputed facts alleged in the complaint
are true and must draw all reasonable inferences in the non-movant's favor. See Erickson
v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge
must accept as true all of the factual allegations contained in the complaint." (citing Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A.,

534 U.S. 506, 508 n.1 (2002)))); <u>Fid. & Guar. Ins. Underwriters, Inc. v. United States</u>, 805 F.3d 1082, 1084 (Fed. Cir. 2015); <u>Trusted Integration, Inc. v. United States</u>, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." <u>Holley v. United States</u>, 124 F.3d 1462, 1465 (Fed. Cir.) (citing <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1 (1983)), <u>reh'g denied</u> (Fed. Cir. 1997); <u>see</u> <u>also</u> <u>Klamath Tribe Claims Comm. v. United States</u>, 97 Fed. Cl. 203, 208 (2011); <u>Gonzalez-McCaulley Inv. Grp., Inc. v. United States</u>, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2017); Fed. R. Civ. P. 8(a)(1), (2) (2017); <u>see</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555-57, 570. To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." <u>Bradley v. Chiron Corp.</u>, 136 F.3d 1317, 1322 (Fed. Cir. 1998); <u>see</u> <u>also</u> <u>McZeal v. Sprint Nextel Corp.</u>, 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); <u>Briscoe v. LaHue</u>, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), <u>aff'd</u>, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" <u>Three S Consulting v. United States</u>, 104 Fed. Cl. 510, 523 (2012) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555), <u>aff'd</u>, 562 F. App'x 964 (Fed. Cir.), <u>reh'g</u> <u>denied</u> (Fed. Cir. 2014). As stated in <u>Ashcroft v. Iqbal</u>, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555).

Regarding the case currently before the court, the United States Court of Appeals for the Federal Circuit has held that "there is a 'well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" <u>Hamlet v. United States</u>, 63 F.3d 1097, 1101 (Fed. Cir.) (quoting <u>Chu v. United States</u>, 773 F.2d 1226, 1229 (Fed. Cir. 1985)), <u>reh'g</u> <u>denied</u> <u>and en banc suggestion declined</u> (Fed. Cir. 1995), <u>cert. denied</u>, 517 U.S. 1155 (1996). Likewise, judges of this court have frequently indicated that, "it is presumed that 'absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" <u>Charnetski v. United States</u>, 111 Fed. Cl. 185, 188 (2013) (quoting <u>Chu v. United States</u>, 773 F.2d at 1229); <u>see</u> <u>also</u> <u>Piper v. United States</u>, 90 Fed. Cl. 498, 503 (2009), <u>aff'd</u>, 374 F. App'x 957 (Fed. Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 936 (2011); <u>Anderson v. United States</u>, 64 Fed. Cl. 759, 762 (2005) ("If the plaintiffs are appointed employees, with no contractual aspects to their employment relationship,

their case must be dismissed for lack of subject matter jurisdiction."); Calvin v. United States, 63 Fed. Cl. 468, 472 (2005) ("In other words, there is a 'presumption that federal employees hold their positions pursuant to appointment[ ] rather than by contract.'" (quoting Collier v. United States, 56 Fed. Cl. 354, 357 (2003), aff'd, 379 F.3d 1330 (Fed. Cir. 2004))) (alteration in Calvin v. United States); Berry v. United States, 27 Fed. Cl. 96, 100 (1992) ("The contract liability enforceable under the Tucker Act does not extend to every agreement, understanding, or compact entered into by the Government. It is well established that the rights of civilian and military public employees against the Government do not turn on contract doctrines, but are matters of legal status." (citation omitted)); Darden v. United States, 18 Cl. Ct. 855, 859 (1989) (finding that the "most that can be said" about plaintiff's job description as a Grade 5 personnel clerk "is that plaintiff was apprised of her forthcoming responsibilities and the salary to which she was entitled for the performance of those duties. It may very well have created certain procedural rights, but under no circumstance may it be viewed as giving rise to a contractual relationship sufficient to create jurisdiction under the Tucker Act.").

The Federal Circuit further summarized the status of a federal employee who holds an appointment as follows:

> [F]ederal workers serve by appointment, and their rights are therefore a matter of legal status even where compacts are made. In other words, their entitlement to pay and benefits must be determined by reference to the statutes and regulations governing [compensation], rather than to ordinary contract principles. Though a distinction between appointment and contact may sound dissonant in a regime accustomed to the principle that the employment relationship has its ultimate basis in contract, the distinction nevertheless prevails in government service. Applying these doctrines, courts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel. These cases have involved, inter alia, promises of appointment to a particular grade or step level, promises of promotion upon satisfaction of certain conditions, promises of extra compensation in exchange for extra services, and promises of other employment benefits.

Adams v. United States, 391 F.3d 1212, 1221 (Fed. Cir. 2004) (quoting Kizas v. Webster, 707 F.2d 524, 535 (D.C. Cir. 1983), cert. denied, 464 U.S. 1042 (1984)) (alteration in original).

Defendant accurately points out that a federal employee's "'relationship with the Government cannot be simultaneously governed by both an appointment and a contract.'" Charnetski v. United States, 111 Fed. Cl. at 188 (quoting Collier v. United States, 56 Fed. Cl. at 356); see also Piper v. United States, 90 Fed. Cl. at 503; Calvin v. United States, 63 Fed. Cl. at 472 ("While the Supreme Court has not explicitly held that employment by appointment and by contract are mutually exclusive, its reasoning implies such a principle, and courts have interpreted [Army and Air Force Exchange Serv. v.]Sheehan[,

456 U.S. 728 (1982)] and like precedents to require mutual exclusivity"). In Anderson v. United States, plaintiffs argued "that at least some aspects of their employment are governed by contract, and they assert that they *can* simultaneously be party to both types of relationships." Anderson v. United States, 64 Fed Cl. at 762 (emphasis in original). The Anderson court, however, rejected this argument, finding that "[t]his proposition has been repeatedly rejected both by the Federal Circuit and the Court of Federal Claims." Anderson v. United States, 64 Fed. Cl. at 762-63 (citing Collier v. United States, 379 F.3d 1330, 1332 (Fed. Cir. 2004)). Ultimately, the Anderson court held that "[t]he law is clear on this point: the plaintiffs cannot be both government employees and contractual employees; the two are mutually exclusive." Anderson v. United States, 64 Fed. Cl. at 762-63; see also Hamlet v. United States, 63 F.3d at 1101; Collier v. United States, 56 Fed. Cl. at 357 (citing Darden v. United States, 18 Cl. Ct. at 859; and House v. United States, 14 Cl. Ct. 32, 36 (1987)).

When determining whether a government employee is serving by contract or appointment, the court looks to the relevant statutory language and implementing regulations, as well as to the hiring documents. See Hamlet v. United States, 63 F.3d at 1101; Charnetski v. United States, 111 Fed. Cl. at 188; Piper v. United States, 90 Fed. Cl. at 503; Calvin v. United States, 63 Fed. Cl. at 472. The statute at 5 U.S.C. § 3323, titled "Automatic separations; reappointment; reemployment of annuitants," provides that an annuitant "is not barred by reason of his retired status from employment in an appointive position for which the annuitant is qualified. An annuitant so reemployed . . . serves at the will of the appointing authority." (emphasis added). Additionally, as the defendant notes, "[r]eemployed annuitants are appointed by reinstatement pursuant to 5 C.F.R. §315.401," which provides that "an agency may appoint by reinstatement to a competitive service position a person who previously was employed under career or career-conditional appointment (or equivalent)."[5] (emphasis added). Plaintiff also cites Department of Defense Instruction Number 1400.25, Volume 300, which "[e]stablishes and implements policy, assigns responsibilities, and provides procedures for employment of Federal civilian annuitants in the Department of Defense." The Instruction states "[r]employed annuitant shall be used as needed, to support mission requirements and to help meet the Department's workforce planning challenges. This authority to appoint annuitants shall not be used to solely benefit an annuitant." Dep't of Def. Instruction, No. 1400.25, Vol. 300, at 3 (Dec. 10, 2008) (emphasis added). The Department of Defense Instruction also provides that "[a]nnuitants should be hired to meet critical mission needs. Such appointments should be carefully considered keeping in mind the Department's need to ensure a steady pipeline of leadership talent." Id. (emphasis added). Additionally, the Department of Defense Instruction states that "[a]ppointment of annuitants shall be consistent with all applicable laws and regulations . . . . Reemployed annuitants shall continue to receive full annuity and salary upon appointment and shall not be considered employees for the purposes of subchapter III of chapter 83 or of chapter 84 of [Title 5 of

---

[5] Reinstatement is defined as "the noncompetitive reemployment for service as a career or career-conditional employee of a person formerly employed in the competitive service who had a competitive status or was serving probation when he was separated from the service." 5 C.F.R. § 210.102 (2018).

the United States Code] . . . ." Id. (emphasis added). The Department of Defense Instruction also provides that "[r]eemployed annuitants serve at the will of the appointing authority pursuant to section 3323(b)(1) [of Title 5 of the United States Code]." Id. (emphasis added).

Additionally, the Request for Civilian Hire form included in plaintiff's reemployed annuitant request documentation provided that the position plaintiff was seeking to obtain was a "[t]ime limited appointment," and "[i]f approved, Ms. Wade would return to work for WMRD . . . as a part-time re-employed annuitant on a time-limited appointment." (emphasis added). The language of the relevant statute, regulation, Department of Defense Instruction, and the reemployed annuitant request documentation clearly indicate that the reemployed annuitant position, which plaintiff sought to obtain, was to be an appointive position if the ARL's employment process were completed, which in this case it was not. See Piper v. United States, 90 Fed. Cl. at 505 (determining that the plaintiff in Piper v. United States, who was a reemployed annuitant, held an appointive position when the relevant statutes used the words "employ," "appoint," and "appointed").

Because plaintiff was seeking to obtain an appointive position with the ARL, plaintiff's claim that defendant allegedly breached either an express or implied-in-fact contract between defendant and plaintiff must fail. In Adams v. United States, the United States Court of Appeals for the Federal Circuit explained:

> Appellants served by appointment. The terms of their employment and compensation, consequently, were governed exclusively by statute, not contract. They had not, and could not have, entered into any separate agreement with the Government, express or implied, for additional overtime compensation beyond that to which they were entitled by the applicable statute.

Adams v. United States, 391 F.3d at 1221; see Collier v. United States, 56 Fed. Cl. at 357 ("Plaintiff alternatively argues that he was appointed to the GS-15 position by an implied-in-fact contract. This argument is rejected for the same reasons. If appointments and contracts are mutually exclusive, then surely a person cannot be 'appointed' to a position by an implied-in-fact contract."); Darden v. United States, 18 Cl. Ct. at 859 (dismissing the plaintiff's claim for breach of an express or implied contract for lack of jurisdiction when the plaintiff held an appointive position); see also Boston v. United States, 43 Fed. Cl. 220, 225 (1999) ("Although this Court generally possesses subject matter jurisdiction over contracts implied-in-fact, such is not the case for claims asserted by federal employees who are employed pursuant to appointment, rather than by virtue of an employment contract." (citations omitted)). Therefore, defendant could not have breached the contract plaintiff alleges came into being for the DJ-0341-03, category II, reemployed annuitant position because that position with the ARL would have been an appointive position. See Piper v. United States, 90 Fed. Cl. at 505-06 (dismissing a reemployed annuitant's breach of contract claim for lack of jurisdiction).

Alternatively, defendant notes in its submission to the court that it "has included various documents which the Court may, but need not, rely upon in finding that Ms. Wade has failed to state claim." Defendant attached an appendix to its motion to dismiss, which included a copy of Ms. Wade's most recent notice of personnel action, a copy of Ms. Wade's application for Voluntary Separation Incentive Payment, a declaration signed by Ms. Thacker, and a declaration signed by Ms. Koch. Plaintiff also attached an appendix to her filing, which included email correspondence between plaintiff and Tim Connolly, who plaintiff alleges at the relevant time was an "ARL Attorney," email correspondence between plaintiff and Mr. Lyon, and a copy of Department of Defense Instruction Number 1400.25, Volume 300, which contained highlights and other markings.

Under RCFC 12(d) (2017), "[i]f, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56." "Whether to accept extra-pleading matter on a motion for judgment on the pleadings and to treat the motion as one for summary judgment is within the trial court's discretion." Easter v. United States, 575 F.3d 1332, 1335 (Fed. Cir. 2009) (citing Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38-39 (1st Cir. 2004); and 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1371 (3d ed. 2004)), cert. denied, 559 U.S. 1005 (2010); Duffy v. United States, 120 Fed. Cl. 55, 61 (2015), aff'd, 636 F. App'x 792 (Fed. Cir. 2016). "Courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion' and rely upon that material." Love Terminal Partners v. United States, 97 Fed. Cl. 355, 378-79 (2011) (quoting 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2004)). Before the court may convert a motion to dismiss into a motion for summary judgment, however, the court must ordinarily provide the parties with notice of its intention to do so. See RCFC 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); see also Easter v. United States, 575 F.3d at 1335; Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. 760, 772 (2014) (citing RCFC 12(d)) ("The rules of this court require that the court provide the parties with notice of its intention to treat defendant's motion as a motion for summary judgment and an opportunity to proceed pursuant to the rules of summary judgment."); Martin v. United States, 96 Fed. Cl. 627, 629 (2011) (citations omitted). On January 4, 2018, the court issued an Order notifying the parties of the probability that the court might treat defendant's motion to dismiss as a motion for summary judgment given the earlier submission of several declarations by the defendant and additional filings by both parties, and provided both parties with an opportunity to submit additional, relevant documents.

RCFC 56 is similar to Rule 56 of the Federal Rules of Civil Procedure in language and effect. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a) (2017); Fed. R. Civ. P. 56(a) (2017); see also Alabama v. North Carolina, 560 U.S. 330, 344 (2010); Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Biery v. United States, 753 F.3d 1279,

1286 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Ladd v. United States, 713 F.3d 648, 651 (Fed. Cir. 2013); Minkin v. Gibbons, P.C., 680 F.3d 1341, 1349 (Fed. Cir. 2012); Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1309-10 (Fed. Cir. 2012); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2012); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1325 (Fed. Cir.), reh'g denied (Fed. Cir. 2010); Consol. Coal Co. v. United States, 615 F.3d 1378, 1380 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 564 U.S. 1004 (2011); 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009); Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008), reh'g and reh'g en banc denied, 556 F.3d 1329 (Fed. Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1370-71 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Mata v. United States, 114 Fed. Cl. 736, 744 (2014); Leggitte v. United States, 104 Fed. Cl. 315, 317 (2012); Arranaga v. United States, 103 Fed. Cl. 465, 467-68 (2012); Cohen v. United States, 100 Fed. Cl. 461, 469 (2011); Boensel v. United States, 99 Fed. Cl. 607, 610 (2011).

A fact is material if it will make a difference in the result of a case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248); Mata v. United States, 114 Fed. Cl. at 744; Arranaga v. United States, 103 Fed. Cl. at 467-68; Thompson v. United States, 101 Fed. Cl. 416, 426 (2011); Cohen v. United States, 100 Fed. Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Gorski v. United States, 104 Fed. Cl. 605, 609 (2012); Walker v. United States, 79 Fed. Cl. 685, 692 (2008); Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Schlup v. Delo, 513 U.S. 298, 332 (1995); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); TigerSwan, Inc. v. United States, 118 Fed. Cl. 447, 451 (2014); Dana R. Hodges Trust v. United States, 111 Fed. Cl. 452, 455 (2013); Cohen v. United States, 100 Fed. Cl. at 469-70; Boensel v. United States, 99 Fed. Cl. at 611; Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 717 (2011); Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States, 87 Fed. Cl. 113, 126 (2009); Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 52 F. App'x 507 (Fed. Cir. 2002), published at 317 F.3d 1331 (Fed. Cir. 2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of

law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1993); Leggitte v. United States, 104 Fed. Cl. at 316. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d at 1372; Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968; Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008); Rothe Dev. Corp. v. U.S. Dep't of Def., 262 F.3d 1306, 1316 (Fed. Cir. 2001); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In appropriate cases, summary judgment:

> saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (quoting Pure Gold, Inc. v. Syntex, (U.S.A.) Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992) (citation omitted); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999) ("The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue."); Metric Constr. Co., Inc. v. United States, 73 Fed. Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 555 U.S. 812 (2008); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999); TigerSwan, Inc. v. United States, 118 Fed. Cl. at 451; Stephan v. United States, 117 Fed. Cl. 68, 70 (2014); Gonzales-McCaulley Inv. Grp., Inc. v. United States, 101 Fed. Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Yant v. United States, 588 F.3d 1369, 1371 (Fed. Cir. 2009), cert. denied, 562 U.S. 827 (2010); Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S.

957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanless v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)); Dana R. Hodges Trust v. United States, 111 Fed. Cl. at 455; Boensel v. United States, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 255) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Casitas Mun. Water Dist. v. United States, 543 F.3d at 1283; Lathan Co. Inc. v. United States, 20 Cl. Ct. 122, 125 (1990))); see also Am. Seating Co. v. USSC Grp., Inc., 514 F.3d at 1266-67; Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807. "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1374 (Fed. Cir. 2009); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48.

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Riley & Ephriam Constr. Co. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005); Crown Operations Int'l Ltd. v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994), reh'g denied and en banc suggestion declined (Fed. Cir. 1995)), reh'g denied and en banc suggestion declined (Fed. Cir. 1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; RQ Squared, LLC v. United States, 119 Fed. Cl. 751, 757-58 (2015), subsequent determination, 129 Fed. Cl. 742 (2017), aff'd, 2018 WL 358084 (Fed. Cir. Jan. 11, 2018). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; see also Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009); Long Island Sav. Bank, FSB v. United States, 503 F.3d at 1244; Florida Power & Light Co. v. United States, 375 F.3d 1119, 1124 (Fed. Cir. 2004); Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001); Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; Rasmuson v. United States, 109 Fed. Cl. 267, 271 (2013). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case, and it does not follow

that summary judgment should be granted to one side or the other. See Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968-69; B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied, 532 U.S. 942 (2001); Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other."), reh'g denied and en banc suggestion declined (Fed. Cir. 1999); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997); LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); Rogers v. United States, 90 Fed. Cl. 418, 427 (2009), subsequent determination, 93 Fed. Cl. 607 (2010), aff'd, 814 F.3d 1299 (2015); Consol. Coal Co. v. United States, 86 Fed. Cl. 384, 387 (2009), aff'd, 615 F.3d 1378, (Fed. Cir.), and reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 564 U.S. 1004 (2011); St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1, 8 (2006), aff'd, 511 F.3d 1376 (Fed. Cir. 2008); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration, or, otherwise stated, in favor of the non-moving party. See First Commerce Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); see also DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); Gart v. Logitech, Inc., 254 F.3d 1334, 1338-39 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002); Oswalt v. United States, 85 Fed. Cl. 153, 158 (2008); Telenor Satellite Servs., Inc. v. United States, 71 Fed. Cl. 114, 119 (2006).

"Questions of law are particularly appropriate for summary judgment." Oenga v. United States, 91 Fed. Cl. 629, 634 (2010) (citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here [in Dana Corp.] because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law. Moreover, on each issue one party or the other is entitled to judgment as a matter of law.")); see also Santa Fe Pac. R.R. v. United States, 294 F.3d 1336, 1340 (Fed. Cir. 2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment.").

In the above-captioned case, plaintiff claims that she entered into either an express or implied-in-fact contract with the ARL "when Dr. Baker and I entered into a mutual agreement and Dr. Russell approved the request; thus binding our agreement." Dr. Russell approved her request to become a reemployed annuitant in May of 2015 and June of 2015, respectively. Unlike an express contract, an implied-in-fact contract is an agreement "'"founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."'" Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (quoting Hercules, Inc. v. United States,

516 U.S. 417, 424 (1996) (quoting <u>Balt. & Ohio R.R. Co. v. United States</u>, 261 U.S. 592, 597 (1923))); <u>see also</u> <u>Kam-Almaz v. United States</u>, 682 F.3d 1364, 1368 (Fed. Cir. 2012); <u>Bank of Guam v. United States</u>, 578 F.3d 1318, 1329 (Fed. Cir.) (citing <u>Trauma Serv. Grp. v. United States</u>, 104 F.3d at 1326), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2009); <u>Bay View, Inc. v. United States</u>, 278 F.3d 1259, 1265-66 (Fed. Cir. 2001), <u>reh'g and reh'g en banc denied</u>, 285 F.3d 1035 (Fed. Cir.), <u>cert. denied</u>, 537 U.S. 826 (2002); <u>XP Vehicles, Inc. v. United States</u>, 121 Fed. Cl. 770, 781 (2015); <u>Westlands Water Dist. v. United States</u>, 109 Fed. Cl. 177, 203 (2013); <u>Peninsula Grp. Capital Corp. v. United States</u>, 93 Fed. Cl. 720, 728 (2010) (<u>citing Balt. & Ohio R.R. Co. v. United States</u>, 261 U.S. at 597; and <u>Russell Corp. v. United States</u>, 210 Ct. Cl. 596, 609 (1976)), <u>appeal dismissed</u>, 454 F. App'x 900 (Fed. Cir. 2011). Such an agreement will not be implied "unless the meeting of minds was indicated by some intelligible conduct, act or sign." <u>Balt. & Ohio R.R. Co. v. United States</u>, 261 U.S. at 598; <u>see also</u> <u>Russell Corp. v. United States</u>, 210 Ct. Cl. at 609.

It is clear that "[a] party alleging either an express or implied-in-fact contract with the government 'must show a mutual intent to contract including an offer, an acceptance, and consideration.'" <u>Bank of Guam v. United States</u>, 578 F.3d at 1326 (quoting <u>Trauma Serv. Grp. v. United States</u>, 104 F.3d at 1325); <u>see also</u> <u>Chattler v. United States</u>, 632 F.3d 1324, 1330 (2011) (citing <u>Trauma Serv. Grp. v. United States</u>, 104 F.3d at 1325); <u>Hanlin v. United States</u>, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (citing <u>City of Cincinnati v. United States</u>, 153 F.3d 1375, 1377 (Fed. Cir. 1998)). "The elements of an express oral contract are the same as those of a written contract: mutuality of intent to be bound, definite offer, unconditional acceptance, and consideration." <u>Edwards v. United States</u>, 22 Cl. Ct. 411, 420 (1991) (citing <u>Essen Mall Props. v. United States</u>, 21 Cl. Ct. 430, 440 (1990); <u>Pac. Gas & Elec. Co. v. United States</u>, 3 Cl. Ct. 329, 339 (1983), <u>aff'd</u>, 738 F.2d 452 (Fed. Cir. 1984); and <u>City of Klawock v. United States</u>, 2 Cl. Ct. 580, 584 (1983), <u>aff'd</u>, 732 F.2d 168 (Fed. Cir. 1984)); <u>see also</u> <u>Total Med. Mgmt., Inc. v. United States</u>, 104 F.3d 1314, 1319 (Fed. Cir.) ("The requirements for a valid contract with the United States are: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." (citations omitted)), <u>reh'g denied and en banc suggestion declined</u> (Fed. Cir.), <u>cert. denied</u>, 522 U.S. 857 (1997); <u>San Carlos Irr. & Drainage Dist. v. United States</u>, 877 F.2d 957, 959 (Fed. Cir. 1989); <u>Stanwyck v. United States</u>, 127 Fed. Cl. 308, 312 (2016); <u>Huntington Promotional & Supply, LLC v. United States</u>, 114 Fed. Cl. at 767; <u>Eden Isle Marina, Inc. v. United States</u>, 113 Fed. Cl. 372, 492 (2013); <u>Council for Tribal Emp't Rights v. United States</u>, 112 Fed. Cl. 231, 243 (2013), <u>aff'd</u>, 556 F. App'x 965 (2014). The elements of a binding contract with the United States are identical for express and implied-in-fact contracts. <u>See</u> <u>Night Vision Corp. v. United States</u>, 469 F.3d 1369, 1375 (Fed. Cir. 2006) ("The elements of an implied-in-fact contract are the same as those of an oral express contract."), <u>cert. denied</u>, 550 U.S. 934 (2007); <u>Hanlin v. United States</u>, 316 F.3d at 1328 ("Thus, the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs."); <u>City of Cincinnati v. United States</u>, 153 F.3d at 1377 ("Like an express contract, an implied-in-fact contract requires '(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance.' . . . When the United States is a party, a

fourth requirement is added: The government representative whose conduct is relied upon must have actual authority to bind the government in contract." (quoting City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)); Trauma Serv. Grp. v. United States, 104 F.3d at 1325; Russell Corp. v. United States, 210 Ct. Cl. at 608-09; Weeks v. United States, 124 Fed. Cl. 630, 633 (2016); Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. at 767; Vargas v. United States, 114 Fed. Cl. 226, 233 (2014); Prairie Cnty., Mont. v. United States, 113 Fed. Cl. 194, 202 (2013), aff'd, 782 F.3d 685 (Fed. Cir.), cert. denied, 136 S. Ct. (2015); Mastrolia v. United States, 91 Fed. Cl. 369, 384 (2010) (citing Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (2005)). As a general proposition:

> [T]he law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so. See Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). The corollary is that any party entering into an agreement with the Government accepts the risk of correctly ascertaining the authority of the agents who purport to act for the Government . . . .

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001); see also Snyder & Assocs. Aquisitions LLC v. United States, 133 Fed. Cl. 120, 126 (2017). "'A well pleaded allegation of an express, or implied-in-fact, contract necessarily includes allegations going to each of the requisite elements of a contract.'" De Archibold v. United States, 57 Fed. Cl. 29, 32 (2003) (quoting McAfee v. United States, 46 Fed. Cl. 428, 432, appeal dismissed, 243 F.3d 565 (Fed. Cir. 2000)).

Plaintiff contends that "the element of 'acceptance and offer' for the expressed [sic] contract was established" when she complied with Dr. Baker's instruction to prepare the required documentation supporting her request to become a reemployed annuitant, and that "mutuality of intent to contract was established" when Dr. Russell approved that request. According to plaintiff, Dr. Russell possessed the "delegated authority" to execute a binding contract between plaintiff and the ARL. Plaintiff cites section 4(f) of Department of Defense Instruction 1400.25, Volume 300, as the source of Dr. Russell's authority to contract on the behalf of the United States, which provides:

> The Secretaries of the Military Departments and the Heads of the Defense Agencies and DoD Field Activities with independent appointing authority for themselves and their serviced organizations may approve the employment of annuitants covered by this Volume in executive-level positions and positions at the GS-15 level and below (or equivalent). This authority may be delegated, in writing, to the lowest practical level.

Dep't of Def. Instruction, No. 1400.25, Vol. 300, at 3 (Dec. 10, 2008). Defendant, however, argues that approval of a "reemployed annuitant request packet is not sufficient to demonstrate intent on the part of the United States Government to enter into an enforceable employment contract with the plaintiff. At most this action demonstrates

ARL's intent to submit a request for personnel action and initiate the recruitment process." According to defendant, without an employment offer from the Civilian Personnel Advisory Center, "the offer and acceptance prong of a valid contract is nonexistent." Additionally, defendant asserts that plaintiff has failed to demonstrate that Dr. Baker or Dr. Russell had the authority to enter into a binding contract with plaintiff.

The documents contained in plaintiff's reemployed annuitant request packet, on which plaintiff tries to rely to establish a contractual relationship with the ARL, indicate that Dr. Baker and Dr. Russell were only approving that a request to hire plaintiff as a reemployed annuitant go forward for final approval, as required by ARL management. The first document is titled "Re-employed Annuitant Request," and the second document is titled "REQUEST FOR CIVILIAN HIRE." (capitalization in original) (emphasis added). The Request for Civilian Hire form indicates that the request is for a "Re-employed Annuitant Hiring Request," and that "[i]f approved, Ms. Wade would return to work for WMRD . . . ." (emphasis added). In these documents Dr. Baker and Dr. Russell were merely seeking approval from the responsible, authorized government officials to proceed; no contract came into existence as a result of these two documents.

Moreover, according to declarations included in defendant's appendix and signed by Ms. Koch and Ms. Thacker, which describe the "internal ARL procedures" for hiring reemployed annuitants, the submission of a reemployed annuitant request is only an initial step in the ARL's hiring process. Following Dr. Baker's and Dr. Russell's approval of plaintiff's reemployed annuitant request documentation, Ms. Koch submitted an RPA for plaintiff's employment to the Civilian Personnel Advisory Center on January 4, 2016. Thereafter, the Civilian Personnel Advisory Center still was required to determine whether plaintiff had "cleared" the PPP, RPL, and ICTAP lists, and, only after plaintiff had cleared those three lists, on January 28, 2016, could the Director of ARL approve a salary memorandum. The Civilian Personnel Advisory Center could extend a tentative offer of employment to plaintiff only after the Director of the ARL approved the salary memorandum. Plaintiff, who states in her complaint that she has "extensive knowledge and experience with the ARL hiring process as well as the Civilian Personnel Classification Process," acknowledges that the Civilian Personnel Advisory Center could not have extended a "formal offer" to her until after she cleared the PPP, RPL, and ICTAP lists on January 28, 2016. In this case, however, when a representative from the Civilian Personnel Advisory Center requested a salary memorandum from Ms. Koch, Ms. Koch stated, "[p]lease hold on this action, we were given some news at the Director's meeting yesterday that may change our requirement." Ultimately, after determining that none of the Directorates within the ARL had a need for an individual with plaintiff's skill set in a DJ-0341-03, category II position, the Civilian Personnel Advisory Center did not extend a tentative employment offer to plaintiff for such a position. Consequently, without even an employment offer from the ARL, a contract between plaintiff and defendant to serve as a reemployed annuitant with the ARL could never have come into existence. Plaintiff has failed to prove the requisite elements of either an express or implied-in-fact contract with the ARL. See Bank of Guam v. United States, 578 F.3d at 1326.

22

Plaintiff alleges, but has failed to demonstrate, that Dr. Russell, the Director of the ARL at the relevant time, had the authority to contract on behalf of the United States. Defendant also points out that there also is no evidence in the record that Dr. Baker had the necessary authority. Department of Defense Instruction 1400.25, Volume 300 states that the "Secretaries of the Military Departments and the Heads of the Defense Agencies and DoD Field Activities with independent appointing authority for themselves and their serviced organizations may approve the employment of annuitants . . . . This authority may be delegated, in writing, to the lowest practical level." Dep't of Def. Instruction, No. 1400.25, Vol. 300, at 3 (Dec. 10, 2008). There is no evidence in the record before the court that the authority to hire a reemployed annuitant had been properly delegated to either the Director of the WMRD or the Director of the ARL. Defendant is correct that approval of the plaintiff's "reemployed annuitant request packet to start a personnel action for an appointed position should not create an employment contract where one would otherwise never exist." See Trauma Serv. Grp. v. United States, 104 F.3d at 1325. In sum, the factual record in the case before the court does not demonstrate that a contract between plaintiff and defendant ever came into existence.

## CONCLUSION

Given the facts of plaintiff's case, the court's jurisdiction was never triggered and no contract between plaintiff and the defendant ever came into existence. Plaintiff's complaint is **DISMISSED**. The Clerk's Office shall enter **JUDGMENT** consistent with this opinion.

   **IT IS SO ORDERED.**

                                          **MARIAN BLANK HORN**
                                                  **Judge**